IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. CR-09-347-C |
| RASHAD AKIM LEE, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

On August 31, 2009, Defendant was a back-seat passenger in a vehicle driven by Pamela Clemons. Officer Nease, a Lawton police officer, was patrolling a high-crime area of Lawton when he saw Ms. Clemons drive by. Officer Nease observed that the vehicle's tag light was not working, and consequently conducted a traffic stop. Upon approaching the vehicle, Officer Nease asked all the occupants to identify themselves. Defendant gave his name as Izick Crewford. According to Officer Nease, he believed that Defendant was providing false information based on his body language and actions. Officer Nease obtained Ms. Clemons' driver's license and insurance verification and returned to his car to check her information.

At this point, Officer Nease requested backup due to the number of occupants and the fact that the stop occurred in a high-crime area. Officers Delozier and Durham arrived on the scene within approximately two to three minutes, at which time Officer Nease was still in his patrol car checking the identification provided by the occupants. Officer Delozier repeatedly asked Defendant to keep his hands where he could see them,

and Defendant failed to comply.  Officer Delozier then asked Defendant to step out of the vehicle so that the officer could conduct a pat down search.  Officer Delozier directed Defendant to place his hands on top of his head, and Defendant failed to comply.  Officer Delozier then grabbed the back of Defendant's shirt to control him, and at that point, Defendant fled.  Officers Delozier, after a very brief pursuit, tackled Defendant and a handgun flew from his waistband.  After a short struggle, the officers tazed Defendant in order to subdue him and place him in handcuffs.  Defendant was subsequently charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

Defendant filed the present motion to suppress, arguing that there was no probable cause or reasonable suspicion to justify his detention, arrest, and search.  The government contends, however, that the initial traffic stop and detention were valid and that the officers' subsequent actions did not violate the Fourth Amendment and, therefore, suppression of the evidence obtained from Defendant is not warranted.  The Court recently heard testimony on this motion during a suppression hearing.

Routine traffic stops are considered seizures within the meaning of the Fourth Amendment and are properly analyzed under the principles regarding investigative detentions as set forth in Terry v. Ohio, 392 U.S. 1 (1968).  See United States v. Botero-Ospina, 71 F.3d 783, 786 (10th Cir. 1995).  Courts must consider "first 'whether the officer's action was justified at its inception,' and second 'whether it was reasonably related in scope to the circumstances which justified the interference in the first place.'"  Id. (quoting Terry, 392 U.S. at 20).

According to the Tenth Circuit, "a traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." Botero-Ospina, 71 F.3d at 787. The subjective intent of the officer is irrelevant. Id. In the present case, Officer Nease testified that he initially stopped the vehicle because its tag light was not functioning properly. This constitutes a traffic violation under Oklahoma state statutes, and therefore the Court finds that the traffic stop was initially justified.

"A justifiable stop may not exceed the reasonable duration required to complete the purpose of the stop." United States v. Rice, 483 F.3d 1079, 1082 (10th Cir. 2007). It is well established that, during a routine traffic stop, officers are permitted to "request a driver's license and vehicle registration, run a complete check on the car and driver, and issue a citation." United States v. Soto, 988 F.2d 1548, 1554 (10th Cir. 1993). Officers are also permitted to run background checks on any passengers in the vehicle. Rice, 483 F.3d at 1084.

Officer Nease testified that he was in his patrol car in the process of checking the identification of the occupants of the vehicle when Defendant stepped out of the vehicle, fled from police, and was apprehended. The Court finds that the length of the traffic stop was not unnecessarily prolonged by the officers and no Fourth Amendment issues are therefore presented by the circumstances surrounding the stop and subsequent detention. In addition, there are no Fourth Amendment issues related to Officer Delozier ordering

Defendant to step out of the vehicle. Officers may order passengers to get out of the car during a lawful traffic stop as a matter of course without any need for particularized suspicion of wrongdoing. Maryland v. Wilson, 519 U.S. 408, 414 (1997).[*]

Once Defendant exited the vehicle, Officer Delozier did no more than grab his shirt before Defendant fled. Because the officer had not yet begun a pat down search of Defendant, there is no need for the Court to consider whether the officers had reasonable suspicion to believe Defendant was armed and dangerous. During Defendant's flight and apprehension by the officers, the handgun flew from the waistband of his pants.

Accordingly, the circumstances surrounding Defendant's arrest and the discovery of the handgun raise no Fourth Amendment issues warranting suppression of the firearm. Defendant's Motion to Suppress (Dkt. No. 19) is DENIED.

IT IS SO ORDERED this 9th day of February, 2010.

ROBIN J. CAUTHRON
United States District Judge

---

[*]Defendant argues that the holding of this case only permits officers to order passengers out of the vehicle if they also order the driver to step out as well. A thorough review of the case indicates no such limitation on the court's holding.